## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CLIFFORD H. NORTHERN,**

    **Plaintiff,**

        **v.**                          **Case No.  05-2398-JWL**

**JEREMY KATZ, M.D.,**

    **Defendant.**

_____

### MEMORANDUM AND ORDER

In this medical malpractice lawsuit plaintiff Clifford H. Northern claims that defendant Jeremy Katz, M.D. deviated from the standard of care and was negligent in performing cervical epidural steroid injections on Mr. Northern on September 5, 2003, and September 16, 2003, causing Mr. Northern to suffer paresthesia and persistent pain. The matter is before the court on defendant's motion for partial summary judgment and to strike certain opinions of plaintiff's experts (doc. #27) as well as plaintiff's motions to strike and exclude the expert opinions of Lowell Wayne Reynolds, M.D. (docs. #29 & #30). For the reasons explained below, defendant's motion for partial summary judgment is denied. Plaintiff's motions are denied without prejudice to plaintiff renewing his objections to Dr. Reynolds's testimony via a motion in limine or an evidentiary objection at trial; defendant is granted leave to file a supplemental expert report for Dr. Reynolds on or before **December 8, 2006**, and plaintiff is granted leave to depose Dr. Reynolds prior to trial.

1

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**A.      Statement of Material Facts**[1]

Mr. Northern saw Dr. Katz at the Headache and Pain Center in Johnson County, Kansas for treatment of mid and lower back pain, supraclavicular pain, intrascapular pain, muscle pain, and neck pain.  Dr. Katz performed caudal epidural steroid injections on Mr. Northern on August 22 and August 29, 2003.  On September 5, 2003, he performed a cervical epidural steroid injection at the C6-C7 level of Mr. Northern's cervical spine.  On September 16, 2003, he attempted to perform another cervical epidural steroid injection at the C6-C7 level of Mr. Northern's cervical spine.  During the course of the attempted injection on September 16, Mr. Northern experienced a sudden sharp pain at his elbow, radiating down his arm.  The procedure was immediately discontinued.  Mr. Northern contends that Dr. Katz negligently performed the procedure, causing Mr. Northern paresthesia and persistent pain.

Plaintiff designated two experts to opine as to the standard of care: Peter S. Ernst, M.D. and Dwayne Jones, M.D.  In Dr. Ernst's expert report, he opines that Dr. Katz breached the standard of care by being negligent in the following respects:

> (1)      performing cervical epidural steroid injections on Mr. Northern which were not indicated or medically necessary because Mr. Northern did not present for treatment with symptoms of radiculopathy or neck pain;

---

[1] Consistent with the well established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to plaintiff, the nonmoving party.

(2)     failing to treat Mr. Northern's complaints of muscle pain, supraclavicular pain and interscapular pain with trigger point injections rather than contra-indicated cervical epidural steroid injections;

(3)     even if the cervical epidural steroid injections were indicated, failing to administer the injections at the appropriate dermatome level, considering Mr. Northern's signs and symptoms;

(4)     performing a second cervical epidural steroid injection on September 16, 2003, when Mr. Northern reported that his pain had improved by 75% and that he was no longer experiencing pain, but rather was experiencing soreness; and

(5)     on September 16, 2003, during the course of the second cervical epidural steroid injection using the trans-laminar approach, deviating the epidural needle to the right, piercing the dura and striking a nerve root, causing paresthesia to Mr. Northern.

In Dr. Jones' expert report, he opines that Dr. Katz breached the applicable standard of care by being negligent in the following respects:

(1)     failing to use live lateral fluoroscopy for guidance during the second cervical epidural steroid injection on September 16, 2003; and

(2)     during the course of the injection, deviating the epidural needle far to the right of the midline of the epidural space, causing him to strike a nerve root.

Defendant now asks the court to exclude two of these opinions.  He asks the court to exclude Dr. Ernst's opinion (1) that the epidural injections were not justified by Mr. Northern's presenting complaints.  Additionally, he asks the court to exclude Dr. Jones' opinion (1) that Dr. Katz should have used lateral fluoroscopy for guidance during the injection.  Defendant further contends that he is entitled to summary judgment on these two negligence theories because, once the court excludes those opinions, plaintiff has not

3

presented a genuine issue of material fact that Dr. Katz's conduct fell below the standard of care in performing the injection based on the presenting complaints and in choosing not to use lateral fluoroscopy.

### B.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack

4

of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

C.    **Analysis**

The court does not need to look any further than the applicable evidentiary standard on a motion for summary judgment to conclude that defendant's argument as to why he is entitled to summary judgment is without merit.  Turning first to Dr. Ernst's opinion that Dr. Katz's conduct fell below the standard of care because the injection was not indicated or medically necessary based on Mr. Northern's presenting complaints, defendant asks the court to exclude this opinion on the grounds that Dr. Ernst's opinion is contradicted by the deposition testimony of plaintiff's other expert, Dr. Jones.  Specifically, Dr. Jones testified that he did not have any criticism of Dr. Katz's decision to give the injection on September 16, 2003, but rather that his criticism was of the manner in which Dr. Katz administered the injection.  Defendant advances a similar argument in asking the court to exclude Dr. Jones's opinion that Dr. Katz should have used lateral fluoroscopy for guidance during the injection.  Fluoroscopy is essentially a live x-ray.  Dr. Katz used fluoroscopy in the "standard AP view" (i.e., the "translaminar" approach[2]), but not in the "lateral" view.  In Dr. Jones' deposition, he stated that if a doctor uses fluoroscopy during the procedure,[3] the doctor should use it in

---

[2] Based on the nature of defendant's argument, the court assumes that using the standard AP view is the same as using the translaminar approach.

[3] Dr. Jones stated that it did not fall below the standard of care to perform an epidural steroid injection without fluoroscopy at all.  In fact, he had performed a number of cervical epidural steroid injections without the use of fluoroscopy himself, although the last time he did so was probably 1997, which was more than six years prior to the procedure at issue in this lawsuit.  But, he testified that if fluoroscopy is used it should be used appropriately, meaning in both the AP and lateral views.

the standard AP view as well as in the lateral view. Defendant asks the court to exclude this opinion on the grounds that it is contradicted by the opinion of plaintiff's other expert, Dr. Ernst. Specifically, in Dr. Ernst's deposition, he testified that he has administered "many hundreds" of epidural steroid injections in his office over the last ten years. He stated that when he uses the translaminar approach his usual practice is that he does not use a lateral approach.

Plaintiff contends, and defendant agrees, that defendant's argument is essentially that the opinions of each of plaintiff's experts "cancel out" the opinions of the other. In other words, defendant contends that the court should exclude Dr. Ernst's opinion that the injection was not justified by the presenting complaints because Dr. Jones stated that he is not critical of Dr. Katz on this issue and that the injection was justified by the presenting complaints. Defendant similarly contends that the court should exclude Dr. Jones' opinion that Dr. Katz should have used lateral fluoroscopy because Dr. Ernst stated that it was acceptable not to use lateral fluoroscopy. Defendant's argument is without merit on a motion for summary judgment. It is well established that in deciding the motion the court must view the evidence in the light most favorable to plaintiff, as the non-moving party. Viewed as such, plaintiff has produced evidence that Dr. Katz's actions fell below the standard of care in that he (among other things) (1) performed the injection when it was not indicated or medically necessary based on the presenting complaints and (2) failed to use live lateral fluoroscopy during the injection. Plaintiff is not obligated to offer at trial all of the opinions that are identified in his expert reports, let alone every comment made in a deposition, so no conflict

7

between plaintiff's experts necessarily will be present.  That is not to say that defendant could not attempt to offer what it deems favorable from the experts' testimony on these issues at trial.  But, the contradicting evidence upon which defendant relies does not, as a matter of law, "cancel out" plaintiff's evidence.  Accordingly, defendant's motions are denied.

## PLAINTIFF'S MOTIONS TO STRIKE AND EXCLUDE
## THE TESTIMONY OF DR. REYNOLDS

Plaintiff asks the court to strike and exclude the testimony of defendant's expert witness Lowell Wayne Reynolds, M.D. for failure to comply with Fed. R. Civ. P. 23(a)(2)(B) and pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  In these motions, plaintiff contends that the court should exclude the testimony of Dr. Reynolds because nowhere in his expert report does Dr. Reynolds state that he is giving an opinion other than his own personal opinion.  Dr. Reynolds's expert report states, in relevant part, as follows:

> Based upon my education, training and experience, I state the following opinions to a reasonable degree of medical certainty or probability:
>
> 1.    Given the physical complaints and findings with which Mr. Northern presented to Dr. Katz, it was appropriate and justified to perform the cervical epidural steroid injections of September 5, 2003, and September 16, 2003.
>
> 2.    Based upon my understanding of the C6-C7 level at which the cervical epidural steroid injection of September 16, 2003 was performed, it was not necessary to use lateral fluoroscopy for guidance during the procedure.

8

My opinions as expressed herein are based upon a reasonable degree of medical certainty or probability.

Plaintiff points out, correctly, that Dr. Reynolds's opinion does not state that he is applying an objective standard of care and does not indicate that he is familiar with the applicable standard of care. As such, plaintiff contends that the court should strike Dr. Reynolds as an expert witness for failure to comply with Fed. R. Civ. P. 26(a)(2)(B) and/or that the court should strike or exclude Dr. Reynolds as a witness pursuant to *Daubert*.

The court will permit Dr. Reynolds to testify as an expert only to the extent that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In Kansas, expert testimony is generally required in a medical malpractice case to establish the accepted standard of care and to prove causation. *Hare v. Wendler*, 283 Kan. 434, 440-41, 949 P.2d 1141, 1145-46 (1997). The opinions expressed in Dr. Reynolds's expert report are that the injections were appropriate and justified, and that it was not necessary to use lateral fluoroscopy during the injection on September 16, 2003. These are not causation opinions and therefore would be admissible only if they relate to the standard of care. The standard of care in a medical malpractice case under Kansas law focuses on whether the physician exercised the reasonable degree of learning, skill, and experience which is ordinarily possessed by other physicians in the same or similar communities. *Chandler v. Neosho Mem'l Hosp.*, 223 Kan. 1, 3, 574 P.2d 136, 138 (1977); *Huffman v. Thomas*, 26 Kan. App. 2d 685, 694, 994 P.2d 1072, 1078 (1999). The opinion expressed by Dr. Reynolds in his expert report does not relate to this standard of care. His report does not

9

state whether he is familiar with the standard of care or whether he has evaluated Dr. Katz's conduct in relation to the appropriate standard of care.  Rather, it simply appears to express Dr. Reynolds' personal opinion as to the propriety of Dr. Katz's actions rather than expressing an opinion that is of such a nature that it would help the jury understand and determine a fact in issue (i.e., the standard of care).  As such, his opinions are inadmissible under Fed. R. Evid. 702.

If, on the other hand, his opinions were in fact based on the standard of care but he simply neglected to state as much in his written report, then the report is in violation of Rule 26(a)(2)(B), which requires a party to disclose the report of a retained expert which contains, among other things, "a complete statement of all opinions to be expressed and the basis and reasons therefor."  Fed. R. Civ. P. 26(a)(2)(B).  Defendant contends that Dr. Reynolds's failure to indicate familiarity with or tie his opinions to the applicable standard of care is merely a technical defect in his expert report, and that plaintiff waived this objection by failing to timely assert it by the deadline set forth in the scheduling order for technical objections related to the sufficiency of the written expert disclosures.  The court disagrees. There is nothing technical about an objection to a standard of care expert report in a medical malpractice case that the expert's report does not relate to the applicable standard of care. Absent the expert's opinion being tied to the standard of care, the expert's opinion is irrelevant.  And, without defendant advancing a substantial justification for the failure, it would be entirely within this court's discretion to exclude the Dr. Reynolds's testimony. *See Gust v. Jones*, 162 F.3d 587, 592 (10th Cir. 1998) (district court did not err by refusing to

allow expert to offer opinion testimony on deviation from the relevant standard of care in Kansas case where the expert report did not indicate that the expert was aware of the standard of care in the relevant community but rather simply expressed the expert's opinion that the method used by the defendant physician was "inadequate").

Defendant requests that if the court finds the expert report to be deficient (which, as explained above, the court does), defendant be permitted leave to supplement Dr. Reynolds's expert report. The court probably would not be inclined to grant such a request if it were closer to trial. But, the trial of this case is not set to begin until February of 2007 and, therefore, the parties have ample time to allow defendant to supplement Dr. Reynolds's expert report and allow plaintiff an opportunity to depose Dr. Reynolds, if plaintiff desires to do so.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Partial Summary Judgment and to Strike Certain Opinions of Plaintiff's "Standard of Care" Experts (doc. #27) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike and Exclude Defendant's Expert Witness Lowell Wayne Reynolds, M.D. for Failure to Comply With Rule 23(a)(2)(B) of the Federal Rules of Civil Procedure and Plaintiff's Motion to Strike and Exclude Defendant's Expert Witness Lowell Wayne Reynolds, M.D. Pursuant to *Daubert* (docs. #29 & #30) are denied without prejudice to plaintiff renewing his objections to Dr.

Reynolds's testimony via a motion in limine or an evidentiary objection at trial; defendant is granted leave to file a supplemental expert report for Dr. Reynolds on or before **December 8, 2006**, and plaintiff is granted leave to depose Dr. Reynolds prior to trial.

**IT IS SO ORDERED** this 22nd day of November, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

12